Peede v. General Motors Corp.

WESLEY WARREN PEEDE, PLAINTIFF v. GENERAL MOTORS CORPORATION, ERVIE MATTHEWS BARBOUR AND EDWARD E. BARBOUR, DEFENDANTS AND THIRD-PARTY PLAINTIFFS; LINWOOD RAY PEEDE, THIRD-PARTY DEFENDANT

No. 8010SC738

(Filed 7 July 1981)

**Cancellation and Rescission of Instruments § 10.3; Torts § 7.2— automobile accident—release of one tortfeasor—mutual mistake**

In an action to recover for injuries sustained in an automobile accident, the trial court erred in entering summary judgment for defendants where the materials offered by plaintiff in opposition to defendants' motions for summary judgment raised a genuine issue of material fact as to whether plaintiff and an insurance adjuster intended to release only plaintiff's brother, who was driving the car in which plaintiff was a passenger, and the company which insured plaintiff's brother and thus made a mutual mistake of fact in executing a release which, by its terms, released all joint tortfeasors.

APPEAL by plaintiff from *Herring, Judge.* Order entered 22 April 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 2 June 1981.

This is a civil action wherein plaintiff Wesley Warren Peede seeks to recover damages resulting from injuries he suffered in an accident involving an automobile manufactured by defendant General Motors Corporation (hereinafter "GMC") in which plaintiff was a passenger, and an automobile owned by defendant Edward E. Barbour and operated by defendant Ervie Matthews Barbour. In a complaint filed 3 June 1979, plaintiff alleged, among other things, the following: On or about 16 June 1976 plaintiff was a passenger in the right rear seat of a 1973 Chevrolet Caprice manufactured by defendant GMC when the vehicle was negligently struck in the rear by a 1971 Ford automobile driven by defendant Ervie Barbour; upon impact, the trunk lid of the Caprice separated from the body of the car, came through the rear windshield, and struck plaintiff in the head, causing severe injuries, including "loss of function of a large part of the brain" and "loss of one eye"; defendant GMC was negligent in the design, manufacture, and assembly of the hinges fastening the lid of the trunk to the body of the 1973 Chevrolet Caprice, and such negligence was a proximate cause of the injuries suffered by plaintiff; defendant GMC breached certain "implied and/or express warranties" with

respect to the 1973 Chevrolet Caprice in which plaintiff was a passenger, and plaintiff's injuries were the "direct and proximate result" of such breach; defendant Ervie Barbour was negligent in the operation of the vehicle she was driving, and such negligence was a proximate cause of plaintiff's injuries; and the vehicle driven by defendant Ervie Barbour was owned by defendant Edward E. Barbour and was being driven with the consent and authorization of defendant Edward Barbour "for the purpose for which the same was maintained and kept" by defendant Edward Barbour.

Defendant GMC answered, admitting it designed and manufactured the 1973 Chevrolet Caprice referred to in the complaint, and that it made certain express warranties in relation to the sale of such automobiles, but denying the other material allegations directed to it in the complaint. Defendant GMC further averred, among other things, as follows: No privity of contract existed between it and plaintiff; the negligence of the driver of the car in which plaintiff was riding, Linwood Ray Peede, plaintiff's brother, along with the negligence of defendant Ervie Barbour, were the sole and proximate causes of the collision and resulting injuries to plaintiff; and plaintiff assumed the risk of the collision and was contributorily negligent. Defendant GMC also pled in bar of plaintiff's claim a "settlement agreement" entered into by plaintiff and his brother Linwood Peede for the sum of $25,000 releasing Linwood Peede "and all other tort feasors" from any liability arising out of the accident.

Defendants Ervie and Edward Barbour also answered, denying the material allegations of the complaint directed to them, except for the allegation that Ervie Barbour was using the vehicle owned by Edward Barbour with Edward Barbour's permission and that Edward Barbour kept and maintained the vehicle for the purpose for which Ervie Barbour was using it. These defendants also pled in bar of plaintiff's claim the "settlement agreement" between plaintiff and Linwood Peede as described above.

On 10 August 1979, defendant GMC filed a motion for judgment on the pleadings, or in the alternative, for summary judgment on the grounds that plaintiff, in consideration for the sum of $25,000, executed a "written release of all claims against Linwood R. Peede and all other tort feasors, including General Motors Cor-

poration, arising out of" the accident in question. In support of its motion, defendant GMC offered the deposition testimony of plaintiff and the release document which in pertinent part provides:

> The undersigned, first party [plaintiff], being of lawful age, in consideration of twenty-five thousand & no/100 dollars ($25,000.00) does hereby forever release, acquit and discharge Linwood R. Peede, second party, and all other tort feasors, from any and all rights of action, claims and demands whatsoever arising out of any act or things done or omitted to be done by second party up to the date of this instrument, including but not limited to rights of action, claims and demands for any and all injury to mind, body, or property, whether now known or not or which may hereafter develop by reason of an occurrence at or near Angier, N.C. on or about 6-16-76. . . .

> . . .

> FIRST PARTY [plaintiff] HAS CAREFULLY READ AND UNDERSTANDS THIS RELEASE AND SIGNS IT FREELY AND WITHOUT RESERVATION.

> CAUTION! READ BEFORE SIGNING

> s/ W. W. Peede

On 23 August 1979, plaintiff moved for an order allowing him to reply to defendant GMC's plea in bar relating to the release, and also moved for summary judgment on the grounds that there was a mutual mistake in leaving in the release the words "all other tort feasors" when the "true intent of the parties was that no person or party be released other than Linwood R. Peede and Unigard Indemnity Company." In support of the motions, plaintiff offered his own affidavit and the affidavit of J. Frank Carter, an adjuster with Unigard Indemnity Company, the automobile liability insurer for Linwood Peede.

The matter came on for hearing on plaintiff's motion for summary judgment, defendant GMC's motion for summary judgment, and on a motion for summary judgment made by defendants Barbour. In addition to the affidavits, the record before the court included the depositions of plaintiff, plaintiff's wife Jo Ann Peede, and J. Frank Carter, the release document, and several requests

for admission with answers. From an order allowing defendants' motions for summary judgment, denying plaintiff's motion for summary judgment, and dismissing plaintiff's action, plaintiff appealed.

*Blanchard, Tucker, Twiggs, Denson & Earls, by Charles F. Blanchard and Douglas B. Abrams; and Hilary D. Daugherty, for the plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter, by Stephen P. Millikin and Douglas W. Ey, Jr., for defendant appellee General Motors Corporation.*

*Ragsdale & Liggett, by George R. Ragsdale, for defendant appellees Ervie and Edward Barbour.*

HEDRICK, Judge.

The sole question presented by this appeal is whether the court erred in entering summary judgment in favor of defendants. Plaintiff contends that a genuine issue of material fact exists as to whether the release was executed under circumstances amounting to mutual mistake. We agree.

In his depositions, plaintiff testified with regard to the release as follows:

> It was my understanding that the limits of my brother's insurance policy were being paid and was releasing my brother.

> I am familiar with the standard release form, but one state is different from another state. I use a standard form in my work, but not like that.

> . . .

> I remember the man from my brother's insurance company coming by. I had never seen him before. When he came by, he identified himself as an insurance adjuster. I knew that he was an insurance adjuster and that he represented my brother's insurance company, Unigard.

> Mr. Carter told me my brother's limits were $25,000, and that he had these papers for me to sign. I said what are they. He said it is a release which releases your brother only. I

said, are you telling me the truth. He said, yes, that is all it is. I said, I can't read this; I couldn't even see it. He said it is just for your brother. I signed and released my brother.

. . .

He did not leave a copy of the release with me.

. . .

I did not have any difficulty writing my name. I could not see well enough with one eye to write my name. I can write like that without seeing at all. . . .

I did not ask Mr. Carter to read this release to me before I signed it. He did not offer to read it to me. My wife has never seen it before. She was in and out at the time. . . . I did tell him that I could not read it. He said it is just a release that releases your brother only and that is it. I accepted the $25,000 and cashed the check. . . .

. . .

I asked him if this releases anyone other than my brother. He said no, this is a release for your brother only. It was as simple as that. I said, are you telling me the truth, and he said yes. I said, I can't read this. There is no way I can read it, and I can't understand it if I did read it. He said, it releases your brother only. That was it, and I signed it for him.

Plaintiff's wife, Jo Ann Peede, testified upon deposition as follows:

I am sure Warren could have read the release but there was no way; he hadn't been reading the newspapers or anything. He hadn't been able to just sit down and read something. . . .

. . .

He [Carter] stated that it released Ray [Linwood Ray Peede] only and his insurance company, that he didn't have any authorization from anyone else, that he wasn't representing anyone else, that it was just Ray.

There was no discussion about anyone else being responsible or at fault. Neither the Barbours nor General Motors was mentioned. . . .

The insurance adjuster, J. Frank Carter, testified upon deposition as follows:

As senior adjuster with Unigard, I had occasion to investigate an accident involving Mr. Wesley Warren Peede which occurred June 16, 1976. Unigard insured Linwood Ray Peede who is Wesley's brother.

. . .

I told him that I had authority to write him a check for $25,000, and take a release releasing Ray Peede and Unigard Insurance Group for this amount. Mr. Peede seemed to understand that was the limits of the policy and he accepted the settlement offer.

I had a form release for Mr. Peede to sign. The release was filled out prior to my going there. . . .

. . .

While I was at the house, Mr. Peede said he didn't have any vision in his left eye because he didn't have an eye. He had a little blurred vision in his right eye. . . .

. . .

At the time of the settlement of the claim, I was solely representing Unigard and Linwood Ray Peede.

At the time of the execution of the release, I told Mr. Peede and made it perfectly clear to Mr. Peede and his wife that this was releasing only Unigard and Linwood Ray Peede. That was my intent, and as far as I know, that was Mr. Peede's intent.

. . .

I am sure that I told Mr. Peede that this would release his brother and Unigard Indemnity Company if he accepted the $25,000 and signed the release. My only intent was to release his brother and Unigard Insurance Group. . . . It was my concern that day to pay the full Unigard coverage and get a release of Unigard and Unigard's insured. . . .

In addition, plaintiff's own affidavit contains the following:

[H]is [plaintiff's] signing of the release would release only his brother, Linwood Ray Peede and Unigard Indemnity Co.; that it was further his understanding that the release did not release any other person or company.

. . .

That at the time of signing the release, plaintiff . . . was unable to read the release which he signed and relied wholly on Mr. Carter's explanation to him as to what he was signing.

That at the time of the signing it was in fact his intent and [he] believed that it was the intent of Mr. Carter that he was releasing only his brother Linwood Ray Peede; and that the fact the words "all other tort feasors" in the fifth line of the release were not stricken was a mistake.

Furthermore, the affidavit of J. Frank Carter contains the following:

At the time of the execution, I made it clear to Mr. W. W. Peede that this was releasing only his brother and that this was the intent of both Mr. W. W. Peede and myself when the release was executed.

The words "all other" tort feasors in the fifth line was mistakenly left in and included in the release.

In *Cunningham v. Brown*, 51 N.C. App. 264, 276 S.E. 2d 718 (1981), after an accident in which a vehicle driven by the defendant collided with a motorcycle ridden by the plaintiffs, the plaintiff-wife gave a release to plaintiff-husband's automobile liability insurer which contained the following language:

release and forever discharge LANCE CUNNINGHAM [plaintiff-husband] and any other person, firm, or corporation charged or chargeable with responsibility or liability . . . from any and all claims . . . loss or damages of any kind already sustained or that [she] may hereafter sustain in consequence of [the accident].

The defendant sought and obtained summary judgment in her favor on the basis of the above-quoted language. This Court, after stating that nothing else appearing, the quoted language would release all other entities involved in the accident, said that the

release could nevertheless be avoided upon a showing that its execution resulted from mutual mistake of fact, citing *Cheek v. R. R.*, 214 N.C. 152, 198 S.E. 626 (1938). This Court then stated:

> The facts alleged in plaintiff-wife's affidavit would permit a finding that she and the adjuster agreed and intended to release only plaintiff-husband. The document signed contained language contrary to this mutual agreement and intention in that by its terms it released other joint tortfeasors as well as plaintiff-husband. It therefore failed to achieve the result which could be found to have been agreed to and intended by both parties. . . . Thus, the failure to accomplish the result intended by both parties here could be found to constitute a mutual mistake of fact which would permit reformation of the document. [footnote omitted]

*Id.* at 273-74, 276 S.E. 2d at 726. This Court held that the plaintiff-wife's affidavit raised genuine issues of fact as to whether the release was executed under circumstances amounting to mutual mistake, and that the trial court erred in entering summary judgment for the defendant.

We hold that the present case is controlled by *Cunningham v. Brown, supra.* The materials offered by plaintiff in opposition to defendants' motions for summary judgment clearly raise a genuine issue of material fact as to whether plaintiff and Carter, the adjuster for Unigard, intended to release only Linwood Peede and Unigard Indemnity Company and thus made a mutual mistake of fact in executing a release that by its terms released all joint tort-feasors.

We note, in addition, that plaintiff had sued defendant GMC for breach of warranty as well as in tort. Defendant GMC moved for summary judgment on the ground that the provisions of the release absolved them from liability to plaintiff; the provisions of the release, however, would *not* apply to plaintiff's claim under breach of warranty.

We therefore conclude that the trial court erred in entering summary judgment in favor of defendants. The order granting defendants' motions for summary judgment, denying plaintiff's motion for summary judgment, and dismissing plaintiff's action is

reversed, and the cause remanded to the trial court for further proceedings consistent with this Opinion.

Reversed and remanded.

Judges MARTIN (Harry C.) and WELLS concur.